1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

KYLE M. LYNCH,

No.  2:13-cv-01855-CKD

12

Plaintiff,

13

v.

ORDER

14

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

15

16

Defendant.

17

18

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19

("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21

("Act"), respectively.  For the reasons discussed below, the court will grant plaintiff's motion for

22

summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand

23

this matter under sentence four of 42 U.S.C. § 405(g).

24

BACKGROUND

25

Plaintiff, born June 5, 1979, applied on October 27, 2009 for DIB and SSI, alleging

26

disability beginning December 15, 2007.  Administrative Transcript ("AT") 125-131.  Plaintiff

27

alleged he was unable to work due to nerve damage in his neck and back, bipolar disorder,

28

depression, obsessive compulsive disorder, attention deficit disorder, and social anxiety disorder.

AT 68.  In a decision dated December 28, 2011, the ALJ determined that plaintiff was not disabled.[1]  AT 29.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

> 2.  The claimant has not engaged in substantial gainful activity since December 15, 2007, the alleged onset date.

> 3.  The claimant has the following severe impairments: depressive disorder, social anxiety disorder, cervical spondylosis, back strain, obsessive compulsive disorder, and attention deficit disorder.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except: he is unable to climb ladders, ropes, or scaffolds; he could occasionally climb ramps and stairs; he could occasionally crouch and crawl; he could frequently balance, kneel, and stoop; he could occasionally work overhead; he is able to understand, remember, and carry out simple, detailed, and complex tasks; he should avoid working with the public; and he could interact with supervisors and coworkers.

6. The claimant is capable of performing past relevant work as a clerical worker and a parts router. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2007, through the date of this decision.

AT 22-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ gave improper weight to the opinion of Dr. Hala Saleem, a treating psychiatrist, and Dr. Troy Ewing, a consultative psychologist; (2) the ALJ improperly disregarded lay testimony of plaintiff's mother, Peggy Lynch; and (3) the ALJ failed to fully develop the record with respect to plaintiff's past work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

3

1    rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

2            The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

3    Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

4    conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

5    affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

6    also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

7    administrative findings, or if there is conflicting evidence supporting a finding of either disability

8    or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

9    1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

10   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

11   ANALYSIS

12       A. Medical Opinions

13           Plaintiff contends the ALJ failed to give proper weight to the opinions of Dr. Hala Saleem

14   and Dr. Troy Ewing.  The weight given to medical opinions depends in part on whether they are

15   proffered by treating, examining, or non-examining professionals.  Lester, 81 F.3d at 830.

16   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

17   opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d

18   1273, 1285 (9th Cir. 1996).

19           To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20   considering its source, the court considers whether (1) contradictory opinions are in the record,

21   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

22   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

23   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

24   rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

25   830.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts

26   and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

27   Magallanes v. Bowen, 881 F.2d 747, 751 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th

28   Cir. 1986)).  "The ALJ must do more than offer his conclusions.  He must set forth his own

                                                    4

1    interpretations and explain why they, rather than the doctors[], are correct." Embrey v. Bowen,

2    849 F.2d 418, 421-22 (9th Cir. 1988).  While a treating professional's opinion generally is

3    accorded superior weight, if it is contradicted by a supported examining professional's opinion

4    (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.

5    Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).

6              1.   Dr. Hala Saleem

7              Plaintiff contends the ALJ failed to provide specific and legitimate reasons supported by

8    substantial evidence for rejecting the opinion of Dr. Saleem.  Dr. Saleem treated plaintiff on a

9    regular basis throughout 2011.  AT 343-47, 356-57.  In a medical assessment of ability to do

10   work-related activities dated October 21, 2011, Dr. Saleem diagnosed plaintiff with bipolar

11   disorder and social anxiety disorder.  AT 339-42, 418.  Clinical findings noted that plaintiff was

12   "disheveled, pacing, rocking, depressed, anxious."  AT 339.  Dr. Saleem also found that

13   plaintiff's response to treatment was poor and prognosis was guarded.  AT 339.  Dr. Saleem's

14   assessment also indicated that plaintiff had no ability to relate to co-workers, deal with the public,

15   function independently, maintain attention and concentration, and understand, remember and

16   carry out detailed job instructions.  AT 340-41.  Dr. Saleem further found that plaintiff had a poor

17   ability to follow work rules, use judgment, interact with supervisors, deal with work stress,

18   understand, remember and carry out complex instructions, maintain personal appearance, behave

19   in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability.

20   AT 340-41.  A month later, Dr. Saleem wrote a letter supporting plaintiff's disability claim,

21   noting plaintiff's diagnosis of bipolar disorder, obsessive compulsive disorder, attention deficit

22   hyperactivity disorder, and social anxiety disorder.  AT 418.

23              The ALJ gave Dr. Saleem's opinion little weight, concluding that the opinion was

24   speculative, inconsistent, and contrary to the evidence.  AT 27.  According to the ALJ, Dr.

25   Saleem's opinion that plaintiff has been unable to work or function since December 2007 was

26   speculative because Dr. Saleem first treated plaintiff in March 2011, well after the alleged

27   disability onset date.  AT 27.  However, as plaintiff notes, Dr. Saleem's opinion as to plaintiff's

28   disability onset date is consistent with the agency's policy of using the alleged onset date when

consistent with available evidence.  SSR 83-20.  Plaintiff's work history demonstrates that he has not been employed since 2007, and, as discussed below, his employment prior to 2007 required increasing accommodations for his mental impairments.  AT 154.  Plaintiff's medical history also supports Dr. Saleem's opinion that the onset of disability was December 2007.  AT 359, 380.  Prior to December 2007, plaintiff had an established history of depression and anxiety.  AT 359, 380.  From April 2004 to June 2004, plaintiff was admitted to a day treatment psychiatric program at Eden Medical Center to treat his depression and anxiety.  AT 380.  In November 2004, plaintiff was placed on a 5150 hold at Fremont Hospital, where he stated that he had suicidal thoughts.  AT 359.  In that stay, he was seen by Dr. Vasdeep Kahlon who noted that plaintiff had a history of depression.  AT 359.  Dr. Saleem's opinion that the onset of disability was December 2007 is supported by the record. Thus, the ALJ's reasons for rejecting Dr. Saleem's opinion as speculative are not supported by substantial evidence.

The ALJ also found that Dr. Saleem's opinion regarding plaintiff's poor response to medication was inconsistent with Dr. Saleem's sustained recommendations that plaintiff stay on the same three medications (Klonopin, Lamictal, and Zoloft) throughout the course of treatment.  AT 27.  The medical evidence shows, however, that Dr. Saleem recommended more than three medications and frequently adjusted the dosages for those medications.  AT 357 (March 2011 started Klonopin); 346 (April 2011 started Lamictal, May 2011 increase Lamictal and starts Zoloft); 344 (started Risperdal).  Prior to seeing Dr. Saleem in 2011, plaintiff tried several medications, including Paxil, Remeron, Zoloft, Prozac, Abilify, Wellbutrin, Klonopin, Xanax, Trileptal, and Seroquel.  AT 211, 214, 351, 381.  Plaintiff reported that Wellbutrin and Klonopin "worked best."  AT 351.  Plaintiff's poor response to treatment is evident in Dr. Saleem's observations.  Those notes indicate that plaintiff was anxious and had difficulty focusing and concentrating at nearly every visit.  AT 343-46.  The combination of the frequent adjustments to plaintiff's medication regimen and plaintiff's difficulty focusing and concentrating throughout Dr. Saleem's treatment support Dr. Saleem's opinion that plaintiff had a poor response to medication.  Thus, the ALJ erred in rejecting Dr. Saleem's opinion as inconsistent with plaintiff's prescribed medical regimen.

1    The ALJ also found that Dr. Saleem's opinion regarding plaintiff's inability to sustain

2    employment was contrary to plaintiff's work record.  AT 27.  While plaintiff's work record shows

3    that he was employed from 1999 through 2004 and from 2006 to 2007, plaintiff frequently

4    switched positions and, at times, worked for less than the full year in those periods.  AT 132-33,

5    154-59.  Plaintiff's job responsibilities also decreased from 1999 to 2007.  In 1999, plaintiff was a

6    thermal sprayer and supervised other employees.  AT 154, 156.  In 2007, plaintiff was a CMM

7    operator with no supervisor duties.  AT 154-55.  Plaintiff explained that, in this last position, he

8    operated a machine in a room alone, so that he did not have to be around other employees.  AT

9    50.  Plaintiff also testified that he has worked for only one company, Rolls Royce, and obtained

10   that job through his father's influence and position with the company.  AT 40-41, 50.  The record

11   is unclear as to what extent plaintiff's sustained employment with Rolls Royce can be attributed

12   to his father's influence and position with the company.[2]  Viewing the record as a whole, the

13   ALJ's rejection of Dr. Saleem's opinion as inconsistent with plaintiff's work record is not

14   supported by substantial evidence.  The reasons set forth by the ALJ in rejecting Dr. Saleem's

15   opinion are neither specific nor legitimate.

16                    2.   Dr. Troy Ewing

17   Plaintiff contends the ALJ failed to provide specific and legitimate reasons supported by

18   substantial evidence for rejecting Dr. Ewing's opinion regarding plaintiff's ability to accept

19   instructions from supervisors and interact with coworkers and the public.  On December 23, 2009,

20   consultative psychologist, Troy Ewing, evaluated plaintiff, diagnosing plaintiff with obsessive

21   compulsive disorder and depressive disorder.  AT 286.  Plaintiff's Global Assessment of

22   Functioning ("GAF") was 55.[3]  AT 286.  Dr. Ewing determined that plaintiff was able to perform

23   _____

24   [2]      Plaintiff separately argues that the ALJ failed to develop the record with respect to
     plaintiff's work with Rolls Royce as sheltered work.  The Court addresses this issue in Section C
     below.

25   [3]      Global Assessment of Functioning is a scale reflecting the "psychological, social, and
     occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic

26   Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 51-60 GAF

27   indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic
     attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends,

28   conflicts with peers or co-workers).  Id.

1    simple and complex tasks because of no noted intellectual impairments.  AT 287.  However, Dr.

2    Ewing opined that plaintiff had a poor ability to accept instructions from supervisors and interact

3    with coworkers and the public due to his anxiety.  AT 287.  He also concluded that plaintiff had a

4    fair ability to maintain regular attendance, complete a normal workday or workweek without

5    interruptions from a psychiatric condition, and handle normal work-related stress from a

6    competitive work environment.  AT 287.  Dr. Ewing's prognosis of plaintiff was fair and good

7    with psychiatric medication and therapy.  AT 287.

8         The ALJ gave Dr. Ewing's opinion significant weight except to the extent that it asserted

9    plaintiff had poor ability to accept instructions from supervisors and interact with coworkers and

10   the public.  AT 26.  The ALJ reasoned that Dr. Ewing noted no serious attitude issues other than

11   plaintiff's anxious mood and that plaintiff's work experience did not indicate difficulties getting

12   along with supervision or co-workers.  AT 26.  The ALJ's conclusion is not supported by the

13   record.  Plaintiff has been repeatedly diagnosed with social anxiety disorder, which the ALJ

14   found to be a severe impairment.  AT 22.  In his December 2009 examination of plaintiff, Dr.

15   Ewing noted that plaintiff was tapping his leg and writing on his hands and palms during the

16   interview.  AT 285.  Dr. Saleem noted that plaintiff was anxious at nearly every visit.  AT 343-46.

17   During his hearing before the ALJ, plaintiff appeared nervous and "keyed up."  AT 40.  As

18   discussed above, plaintiff's job responsibilities significantly decreased from a position involving

19   supervision of other employees to a completely isolated position with no contact with other

20   employees.  AT 50, 154-56.  Plaintiff testified that he does not have any friends.  AT 45-46.

21   Peggy Lynch, plaintiff's mother, reported that plaintiff stays in his room and limits his interaction

22   with others.  AT 146, 150-51.  The reasons given by the ALJ for rejecting Dr. Ewing's opinion

23   that plaintiff had poor ability to accept instructions from supervisors and interact with coworkers

24   are not supported by substantial evidence.

25        B.  Lay Witness Testimony

26        Plaintiff contends the ALJ disregarded, without comment, the third-party function report

27   of Peggy Lynch, plaintiff's mother.  "[L]ay witness testimony as to a claimant's symptoms or

28   how an impairment affects ability to work is competent evidence, and therefore cannot be

1  disregarded without comment." Nyguen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also

2  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position

3  to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If

4  the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are

5  germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Comm'r Soc. Sec. Admin.,

6  454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay

7  testimony favorable to plaintiff, court cannot consider error to be harmless unless it can

8  confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached

9  different disability determination).  "If the ALJ gives germane reasons for rejecting testimony by

10  one witness, the ALJ need only point to those reasons when rejecting similar testimony by a

11  different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine v.

12  Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)).  Harmless error analysis applies to

13  an ALJ's failure to address lay witness testimony.  Id. at 1117 ("Where lay witness testimony

14  does not describe any limitations not already described by the claimant, and the ALJ's well-

15  supported reasons for rejecting the claimant's testimony apply equally well to the lay witness

16  testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's

17  failure to discuss the lay witness testimony to be prejudicial per se.").  "'[T]he burden of showing

18  that an error is harmful normally falls upon the party attacking the agency's determination."

19  Molina, 674 F.3d at 1111 (quoting Shinseki v. Sanders 556 U.S. 396, 409, 129 S. Ct. 1696, 173

20  L.Ed.2d 532 (2009)).

21       The ALJ described Ms. Lynch's report as follows:

22       The claimant's mother wrote a Function Report and stated that the
         claimant takes longer to do personal hygiene task; he has disturbed
23       sleep; he does not attend social activities; he does not spend time
         with others; he is antisocial; he has OCD; he no longer has friends;
24       he feels stressed when he is near crowds; he must ask questions
         when trying to follow instructions; he does not handle stress or
25       changes in routine; he is easily overwhelmed; he has difficulty
         lifting, walking, posturing, sitting, standing, and reaching; and he
26       could walk for 20 minutes before having to rest for an hour.

27  AT 25.  The ALJ made no further findings with regard to Ms. Lynch's report.

28  /////

9

1    The Commissioner contends that although the ALJ provided no reasons for rejecting Ms.

2    Lynch's report, any error by the ALJ was harmless under <u>Molina</u>.  However, in this instance,

3    <u>Molina</u> is inapplicable.  The ALJ found plaintiff not entirely credible because: 1) plaintiff's

4    condition was "well controlled"; 2) plaintiff has considerable work-related abilities; and 3)

5    plaintiff was not entirely forthcoming about his history of using illegal drugs.  AT 26-27.  The

6    ALJ did not explain how the reasons for rejecting plaintiff's credibility were "equally relevant" to

7    Ms. Lynch.  <u>See Molina</u>, 674 F.3d at 1115.  Furthermore, as plaintiff notes, the ALJ made no

8    findings describing the similarities between plaintiff's statements and Ms. Lynch's statements.

9    Ms. Lynch's statements are not duplicative of plaintiff's statements.   For example, Ms. Lynch

10   reported that plaintiff exhibited an unusual fear, refusing to take showers if no one else is home.

11   AT 152.  Plaintiff did not report or testify regarding this particular behavior.  <u>See</u> AT 35-63; 138-

12   45.  The ALJ erred by failing to provide any reasons for discrediting Ms. Lynch's report.

13           C.  <u>Plaintiff's Ability to Perform Past Relevant Work</u>

14           Plaintiff further contends the ALJ failed to address whether plaintiff's past work was

15   sheltered work.  The Social Security Act describes sheltered work as work "done under special

16   conditions," including simple tasks by a handicapped person under close and continuous

17   supervision, or where the employer pays more for the work than the value of the work that is

18   performed, in effect subsidizing the work.  20 C.F.R. § 404.1574(a)(2); <u>see also</u> SSR 83-33

19   ("Sheltered employment is employment provided for handicapped individuals in a protected

20   environment under an institutional program.").  "The concept of substantial gainful activity

21   involves the amount of compensation and the substantiality and gainfulness of the activity itself."

22   <u>Keyes v. Sullivan</u>, 894 F.2d 1053, 1056 (9th Cir.1990).  "The mere existence of earnings over the

23   statutory minimum is not dispositive."  <u>Id.</u>  "The claimant may rebut a presumption based on

24   earnings with evidence of his inability to . . . perform the job well, without special assistance, or

25   for only brief periods of time."  <u>Id</u>.  Among the factors to be considered are "how well the person

26   is able to perform the work" and "special conditions under which the work is performed."  <u>Id</u>.

27   The regulations provide in pertinent part:

28           We consider how well you do your work when we determine

10

> whether or not you are doing substantial gainful activity. If you do your work satisfactorily, this may show that you are working at the substantial gainful activity level. If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level. If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, or to the operation of a business if you are self-employed, this does not show that you are working at the substantial gainful activity level.

20 C.F.R. § 404.1573(b).  The regulations further provide that work performed under special circumstances might not be considered substantial gainful activity.  20 C.F.R. § 404.1573(c). Among factors that may be considered in making this determination are situations in which:

> (1) You required and received special assistance from other employees in performing your work;

> (2) You were allowed to work irregular hours or take frequent rest periods;

> (3) You were provided with special equipment or were assigned work especially suited to your impairment;

> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir.1991).  The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).  Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition that could have a material impact on the

11

1    disability decision.  See Smolen, 80 F.3d at 1288; Wainwright v. Sec'y of Health and Human

2    Servs., 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence ... triggers the ALJ's duty to

3    'conduct an appropriate inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at

4    1288.)  The ALJ can develop the record by (1) making a reasonable attempt to obtain medical

5    evidence from the claimant's treating sources, (2) ordering a consultative examination when the

6    medical evidence is incomplete or unclear and undermines ability to resolve the disability issue;

7    (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing;

8    or (5) keeping the record open for supplementation.  See id.  The ALJ's decision may be set aside

9    due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as

10   a result of said failure.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991).

11          Plaintiff testified that he obtained work with Rolls Royce because his father is an

12   executive with the company.  AT 40-41.  He further stated that he was able to stop working and

13   was allowed to come back because of his father's influence.  AT 41, 198.  However, the ALJ

14   failed to discuss whether plaintiff's past work with Rolls Royce was performed at a lower

15   standard of productivity or efficiency than other employees, whether he was given special

16   assistance from other employees, or whether he was given the opportunity to continue working

17   there despite his frequent absences.  See 20 C.F.R. § 404.1573(c).  The ALJ failed to develop the

18   record with respect to whether plaintiff's past work was sheltered work.

19          For these reasons, this matter will be remanded so the whole record may be fully and

20   properly addressed by the ALJ in evaluating the medical opinions, the third-party adult function

21   report, plaintiff's work history, and the resulting residual functional capacity.

22   CONCLUSION

23          For the reasons stated herein, this matter will be remanded under sentence four of 42

24   U.S.C. § 405(g) for further development of the record and for further findings addressing the

25   deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

26   /////

27   /////

28   /////

1.  Plaintiff's motion for summary judgment (ECF No. 13) is granted;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 14) is denied; and

3.  This matter is remanded for further proceedings consistent with this order.

Dated:  September 2, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10/4 lynch.ss.rem

13